# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Anthony Sharpe,

                Plaintiff,        Case No. 20-13172

v.                             Judith E. Levy
                             United States District Judge
City of Southfield, *et al.*,

                             Mag. Judge David R. Grand

                Defendants.

_____/

# OPINION AND ORDER DENYING DEFENDANTS' OBJECTIONS [83], DENYING DEFENDANTS' CORRECTED MOTION FOR SUMMARY JUDGMENT [55], AND ADOPTING THE REPORT AND RECOMMENDATION [75]

Before the Court is Magistrate Judge David R. Grand's Report and Recommendation ("R&R"). (ECF No. 75.) The R&R recommends that the Court deny Defendants William Pieroni, Christopher Don, Steven Hendricks, and Joseph Martinez's corrected motion for summary judgment. (ECF No. 55.) Defendants timely filed four objections to the R&R. (ECF No. 83.) Plaintiff did not respond.

For the reasons set forth below, Defendants' objections are denied. Accordingly, the R&R is adopted, and Defendants' corrected motion for summary judgment is denied. (ECF No. 55.)

## I.    Background

The factual background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.

As relevant here, Plaintiff describes five instances of excessive force related to his arrest: (1) Plaintiff was thrown to the ground by all four officers (ECF No. 75, PageID.1034); (2) Plaintiff was "snatched up" by the handcuffs and thrown against the wall (*Id.* at PageID.1033); (3) Pieroni held Plaintiff by the neck and "smashed [his] head up against the wall" (*id.*); (4) Don held Plaintiff against the wall with his hand on Plaintiff's back (*id.*); and (5) the handcuffs were too tight.[1] (*Id.* at PageID.1033–1034.)

---

[1] To the extent Plaintiff argues that he is bringing an excessive force claim based on being "kicked and kneed" while handcuffed, that claim is not properly before the Court. (*See* ECF No. 73, PageID.959 ("[A]fter Plaintiff was slammed on the ground . . . he was kicked and kneed in the arms and midsection . . . . Defendants' kicking in the arms, knees to the midsection . . . all amount to 'gratuitous violence,' all amount to excessive force in violation of the Fourth Amendment.").) Plaintiff's amended complaint makes no mention of being kicked and kneed, nor does it indicate that he is bringing an excessive force claim based on those actions. (*See generally* ECF No. 16.) Plaintiff cannot raise new grounds for his excessive force claims at the

## II.   Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the report and recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

---

summary judgment stage. *Rafferty v. Trumbull Cnty.*, 758 F. App'x 425, 429 (6th Cir. 2018) ("[A]llowing a plaintiff to raise new theories in response to a motion for summary judgment would 'den[y] a defendant sufficient notice of what claims to investigate.'" (alteration in original) (quoting *West v. Wayne Cnty.*, 672 F. App'x 535, 541 (6th Cir. 2016))). Further, the R&R did not discuss this ground for excessive force, and Plaintiff submitted no objections. Thus, the Court will not consider an excessive force claim based on kicking and kneeing.

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380 (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

## III. Analysis

### A.   Objection 1

Defendants first object to the R&R's determination that Defendants' use of force was excessive.[2] Specifically, Defendants contend that the R&R erred "by analyzing the use of force under a rubric that the Defendants[ ] unlawfully entered Plaintiff's home" and that Judge Grand "factor[ed] in[to his analysis] whether the entry into the home was constitutional" (ECF No. 83, PageID.1070–1071), despite the dismissal of Plaintiff's unlawful entry claim. (*See* ECF No. 36, PageID.276.) According

---

[2] Objection 1 appears to be limited to the R&R's analysis of the first four uses of force and does not appear to address the R&R's discussion of the too-tight handcuffing. (*See* ECF No. 83, PageID.1070–1071.)

to Defendants, "the entry into Mr. Sharpe's house is not a part of this case and thus any reliance upon *Reed* [*v. Campbell County*, 80 F.4th 734 (6th Cir. 2023)] is misplaced." (ECF No. 83, PageID.1070.) The Court is not persuaded.

First, Defendants are correct that Plaintiff's only remaining claim is his excessive force claim. However, the R&R discusses the circumstances of Defendants' entry into the home because Defendants justify their use of force "by suggesting there was some threat of immediate danger, pointing out that Sharpe 'admittedly was agitated when he opened the door'; that he told the officers they could not enter his house without a warrant; and that he acknowledged 'trying to close the door on the officers.'" (ECF No. 75, PageID.1043 (citing ECF No. 55, PageID.696–697).) Defendants cannot use the circumstances of their entry into Plaintiff's home as a defense but also ask the Court to ignore them. Moreover, the R&R's consideration of Defendants' entry is consistent with binding Sixth Circuit case law. For example, in *Williams v. Maurer*, 9 F.4th 416 (6th Cir. 2021), the court analyzed an excessive force claim while considering the context in which the defendants used force:

Defendants also appear to alternatively argue that the force was reasonable because Mitchell was blocking the door from opening and they had to act "swiftly to ensure the safety of everyone inside the apartment." But as explained above, a reasonable juror could find that when Defendants forced open Mitchell's door, the information known to them did not support a conclusion that there was a "real exigency" within Mitchell's home that required a warrantless entry. Therefore, a reasonable jury could conclude that the force used by Defendants to forcibly open Mitchell's door while she lawfully attempted to assert her Fourth Amendment right to be free from an unreasonable search and seizure was "gratuitous," and accordingly, violated her Fourth Amendment right to be free from excessive force.

*Id.* at 439. Like Defendants in this case, the defendants in *Williams* argued that their use of force was reasonable because of the context in which they entered the house. Thus, the analysis in the R&R properly considered the "totality of the circumstances" in determining that a reasonable juror could find that the use of force was gratuitous. *See id.*

Defendants' reliance on *Gray v. Shelby County*, No. 22-5542, 2023 WL 5237373 (6th Cir. Aug. 15, 2023) is unavailing.[3] Defendants argue that, under *Gray*, "the use of force is independent of and analyzed

---

[3] The Court notes that *Gray* is unpublished. Unpublished opinions lack precedential force and are not binding. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

separately from the legality of any arrest" and that, as a result, "the legality of entering the home and seizing Mr. Sharpe is not a consideration in deciding the motion." (ECF No. 83, PageID.1070–1071.) But the *Gray* court merely rejected the plaintiff's argument that there was an unlawful use of force *because* there was a false arrest. *Gray*, 2023 WL 5237373, at *6. In this case, the R&R considered the factual circumstances surrounding the entry of the officers leading up to the arrest—not whether Plaintiff was falsely arrested.

Defendants' position is further undermined by the Sixth Circuit's subsequent, published decision in *Reed*. There, the court stated that "minor uses of force are unconstitutionally excessive if they are totally gratuitous." *Reed*, 80 F.4th at 749 (quoting *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004)). As relevant here, the *Reed* court also held that "[b]ecause the jury could conclude that the officers had no right to be inside [Reed's] home to detain him in the first place, it would follow that [a defendant] had no right to use force because such force would necessarily be gratuitous." *Id.* at 749–50. Here, the R&R followed Sixth Circuit precedent, stating that "a reasonable jury could conclude that Defendants violated Sharpe's clearly established right to

be free from excessive force when they threw him to the ground, and then up against the wall, 'smashed' his head into it, and finally 'snatched' him up by the handcuffs that had been placed on him with his hands behind his back" because the Defendants had no right to enter the home to detain him.[4] (ECF No. 75, PageID.1040; *see also id.* at PageID.1043 ("[S]imply because [Plaintiff] was 'agitated' does not mean that Defendants had a reasonable basis to believe that he posed a threat to their safety, or to the safety of anyone else in the house, as he did not have a weapon and was not behaving in a threatening manner.").)

Accordingly, Defendants' first objection is denied.

**B.    Objection 2**

In their second objection, Defendants argue that, at the time of the event at issue, it was not clearly established that Defendants' actions

---

[4] Plaintiff alleges that, after he was taken to the ground, he was handcuffed and not resisting; however, the officers "snatched [him] up" by the handcuffs and slammed him against the wall, and Plaintiff's head was smashed against the wall with another officer pushing his back. (ECF No. 73, PageID.959; ECF No. 75, PageID.1033–1034; ECF No. 69, PageID.911.) The Sixth Circuit has "consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). At a minimum, after Plaintiff was subdued and posed no danger to the officers, these alleged actions constituted clearly unreasonable conduct.

violated Plaintiff's constitutional rights. (ECF No. 83, PageID.1071–1072.) They argue that the R&R erred by "defining the use of force at a high level of generality." (*Id.* at PageID.1071 (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021); *City of Tahlequah v. Bond*, 595 U.S. 9 (2021)).) The Court does not agree.

An official is protected by qualified immunity when their conduct does not violate a clearly established right. *Rivas-Vellegas*, 595 U.S. at 5. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987). Although a case "directly on point" is not required, there must be existing precedent that has "placed the statutory or constitutional question beyond debate." *Rivas-Vellegas*, 595 U.S. at 5. The analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

This specificity "is 'especially important' in the Fourth Amendment excessive force context, because 'it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Gordon v. Bierenga*, 20 F.4th 1077, 1082

(6th Cir. 2021) (alteration in original) (quoting *Rivas-Vellegas*, 595 U.S. at 6). "Whether an officer has used excessive force depends on 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Rivas-Vellegas*, 595 U.S. at 6 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). However, the standards described in *Graham* "are cast 'at a high level of generality.'" *Id.* (quoting *Brosseau*, 543 U.S. at 199). "[I]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199.

To the extent that Defendants argue that only Supreme Court cases can put officers on notice of unlawful conduct, their argument is rejected. (*See* ECF No. 83, PageID.1071 ("The [Supreme Court] went on to suggest that such cases must come from the Supreme Court by writing: 'Neither Cortesluna nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here.'" (quoting *Rivas-Villegas*, 595 U.S. at 6)).) Nowhere in *Rivas-Villegas* did the Supreme Court state that Circuit precedent cannot clearly establish law; in fact, in *Rivas-*

*Villegas*, the Supreme Court assumed this to be true and determined that *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000), a precedential case from the Ninth Circuit, was "materially distinguishable" and not applicable there. *Rivas-Villegas*, 595 U.S. at 6. When evaluating existing precedent, the Sixth Circuit "look[s] first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

While Defendants are correct that "the Supreme Court held that Rivas-Villegas was entitled to qualified immunity" (ECF No. 83, PageID.1071), they misunderstand the reasoning in *Rivas-Villegas*. Defendants claim that the Supreme Court "told courts not to define clearly established law at too high a level of generality particularly when addressing Fourth Amendment claims." (ECF No. 83, PageID.1072.) On the contrary, the Supreme Court stated that "[i]n an obvious case," highly specific case law is not required as the standards outlined in *Graham* and *Garner* can "clearly establish" a right. *Rivas-Villegas*, 595 U.S. at 6 (quoting *Brosseau*, 543 U.S. at 199). In analyzing the conduct at issue in *Rivas-Villegas*, the Supreme Court determined that it was "not an

obvious case" and, as result, the plaintiff "must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful." *Id.*

The Court agrees with the R&R's analysis. Viewing the facts in the light most favorable to Plaintiff, this is "an obvious case." *Id.* The Sixth Circuit has held since 2006 that "[i]t is clearly established law that officers may not use gratuitous violence against individuals who are not actively resisting." *Reed*, 80 F.4th at 750 (citing *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006); *Smith v. City of Troy*, 874 F.3d 938, 945 (6th Cir. 2017) (per curiam); *Barton v. Martin*, 949 F.3d 938, 954 (6th Cir. 2020); *Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022)). Although Defendants claim Plaintiff's deposition testimony demonstrates "his acts of resistance," the Court agrees with the R&R that Plaintiff's "agitation," his telling the officers that they cannot enter his house without a warrant, and his attempt to close the door do not constitute acts of active resistance. *See Goodwin v. City of Painesville*, 781 F.3d 314, 323–24 (6th Cir. 2015) (holding that a refusal to exit an apartment after an officer asked is not active resistance); *Reed*, 80 F.4th at 749 (explaining that "withdrawal into the home does not constitute resistance").

Defendants also argue that they did not have sufficient notice because prior caselaw "requires some evidence of serious injuries." (ECF No. 55, PageID.698.) However, as stated in the R&R, "Defendants cite no caselaw . . . that as of December 2017, it was reasonable to use gratuitous force against an individual who was not resisting, so long as 'serious injuries' were not inflicted. Indeed, dating back to at least 2009, the Sixth Circuit has specifically held that the proper inquiry is whether gratuitous violence was inflicted, not the extent of the injury inflicted."[5] (ECF No. 75, PageID.1046 n.11 (citing *Williams*, 9 F.4th at 439; *Morrison v. Board of Trustees of Green Twp.*, 583 F.3d 394, 406 (6th Cir. 2009), *Barton*, 949 F.3d 938, 954 (6th Cir. 2020)).)

Accordingly, Defendants' second objection is denied.

---

[5] Defendants claim that "the reported decisions of the Sixth Circuit in December of 2017" did not provide notice that their actions were unconstitutional. (ECF No. 55, PageID.697.) However, all but one of the cases they provide are unpublished. (ECF No. 55, PageID.691–698 (describing *Sheffler v. Lee*, 752 F. App'x 239 (6th Cir. 2018); *Lee v. City of Norwalk*, 529 F. App'x 778 (6th Cir. 2013); *Goodrich v. Everett*, 193 F. App'x 551 (6th Cir. 2006); *Hayden v. Green*, 640 F.3d 150 (6th Cir. 2011); *Hodge v. Blount Cnty.*, 783 F. App'x 584 (6th Cir. 2019); *Zucker v. City of Farmington Hills*, 643 F. App'x 555 (6th Cir. 2016)). The single published case Defendants rely on—*Hayden v. Green*, 640 F.3d 150 (6th Cir. 2011)—is far afield from this case. Sharpe did not actively resist and was not suspected of a crime, but the officer in *Hayden* had "ample reason to believe" that the plaintiff was a hit-and-run suspect, and that the plaintiff "had refused to stop his vehicle despite a police officer's obvious indication that he should." *Id.* at 153.

## C.   Objection 3

Defendants' third objection contends that "[t]he Magistrate Judge committed clear error by not analyzing each Defendant's own action, instead he grouped them together." (ECF No. 83, PageID.1072.) They believe that the R&R should have "address[ed] each individual Defendant's actions relative to the excessive force claim." (*Id.*) And they further contend that Plaintiff has not identified what each Defendant did, which "should be fatal to his claim." (*Id.* at PageID.1073.)

With respect to four of the five uses of force alleged, the Court concludes that Plaintiff has identified specific acts attributable to all individual Defendants that constitute excessive force. First, Plaintiff alleges that Pieroni participated in throwing him to the ground (ECF No. 55, PageID.701), held Plaintiff by the neck and "smashed [his] head up against the wall" (ECF No. 55-4, PageID.767), and ignored Plaintiff when he complained that his handcuffs were too tight. (ECF No. 73-4, PageID.983–84; ECF No. 73-2, PageID.964.)

Next, Plaintiff alleges that Don participated in throwing him to the ground (ECF No. 55, PageID.701), held Plaintiff against the wall with his hand on Plaintiff's back (ECF No. 55-4, PageID.767), and ignored

14

Plaintiff when Plaintiff complained that his handcuffs were too tight. (ECF No. 73-4, PageID.983–84; ECF No. 73-2, PageID.964.)

Finally, Plaintiff alleges that Hendricks and Martinez participated in throwing him to the ground (ECF No. 55, PageID.701), and ignored Plaintiff when Plaintiff complained that his handcuffs were too tight. (ECF No. 73-4, PageID.983–84; ECF No. 73-2, PageID.964.) As set forth above, *see supra* §§ III.A. & III.B, the Court agrees with Judge Grand that a reasonable juror could conclude that each Defendants' individual actions violated Plaintiff's constitutional rights, and that they were on notice that their actions constituted excessive force.

With respect to Plaintiff's assertion that he was "snatched up" by the handcuffs and thrown against the wall, the Court concludes that summary judgment should also be denied. During his deposition, Plaintiff testified that, after he was thrown to the ground, face down, an officer grabbed him by the handcuffs, pulled him up, and slammed him against the wall. (ECF No. 55-4, PageID.767, 773–776.) That alleged instance of excessive force is not attributed to a specific Defendant.

As stated in the R&R, "each officer can be held liable only for his own wrongdoing, and courts must review the actions of each officer

15

separately." (ECF No. 75, PageID.1044 (citing *Reed*, 80 F.4th at 748).)
The Sixth Circuit has held that a plaintiff's claim against a defendant
may survive summary judgment, despite the plaintiff's inability to
"pinpoint precisely which named defendant did what" and even if "the
defendants did not intentionally conceal their identities." *Fazica v.
Jordan*, 926 F.3d 283, 293 (6th Cir. 2019). This exception to the general
rule

> applies only to a limited set of plaintiffs: those who can
> identify the small team of officers who potentially used
> excessive force against the plaintiff in each other's presence.
> Second, it does require evidence that each particular
> defendant committed a specific constitutional violation. It
> acknowledges, however, that specific constitutional violations
> can be committed not only by an officer personally applying
> excessive force, but also by an officer witnessing excessive
> force and neglecting his duty to intervene.

*Id.* at 292. Additionally, "circumstances beyond [the plaintiff's] control"
must make the plaintiff "'unable' to learn the identity of the defendants
who violated the plaintiff's constitutional rights." *Pineda v. Hamilton
Cnty.*, 977 F.3d 483, 493 (6th Cir. 2020) (quoting *Batson v. Hoover*, 788
F. App'x 1017, 1020 (6th Cir. 2019)).

Here, Plaintiff's excessive force claim based on being "snatched up"
by the handcuffs and slammed against a wall survives summary

judgment because he has "identif[ied] the small team of officers who potentially used excessive force against the plaintiff in each other's presence" and identified "circumstances beyond his control that made Plaintiff unable to identify which officer committed exactly which alleged constitutional violation." *Slayton v. City of River Rouge*, 515 F. Supp. 3d 695, 705 (E.D. Mich. 2021) (quoting *Pineda*, 977 F.3d at 493–94 (6th Cir. 2020)).

Plaintiff identified four officers who may have used excessive force against him within each other's presence: Don, Pieroni, Hendricks, and Martinez.[6] Although Plaintiff does not know which officer (or officers) picked him up by the handcuffs and slammed him against the wall, the factual record, viewed from Plaintiff's perspective, indicates that all four of them knocked him to the floor (ECF No. 55-4, PageID.769), and were on top of him immediately after. (ECF No. 74-2, PageID.1021.) Plaintiff also testified that, after he was slammed against the wall, at least two

---

[6] In fact, all Defendants are alleged to have personally used excessive force. (*See, e.g.*, ECF No. 55-4, PageID.769 ("All four of them touched me when they threw me on the ground . . . .").) *See also Slayton v. City of River Rouge*, No. 17-13875, 2021 WL 859028, at *2 (E.D. Mich. Mar. 8, 2021) ("Unlike in *Pineda*, where only one out of three individual defendants were actually accused of a constitutional violation, in this case, each individual Defendant is alleged to have personally used excessive force.")

officers were touching him: Don, who had his hand on Plaintiff's back, and Pieroni, who had his hand on Plaintiff's neck. (*Id.* at PageID.1014.) All four Defendants had been touching Plaintiff immediately before the alleged action, and at least two were touching Plaintiff after. Thus, the jury will have "sufficient information to determine the liability of each [ ] individual Defendant" because Plaintiff has provided "sufficient information about the location and conduct of the officers based on his limited sensory observations" and Defendants will be able to provide their own accounts of the incident. *Slayton*, 515 F. Supp. 3d at 706; *see also Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011) (finding that the plaintiff's "sensory observations" and the officers' "accounts of the incident" are sufficient information for a jury to determine individual liability).

The Court also finds that there were circumstances beyond Plaintiff's control that made "Plaintiff unable to identify which officer committed exactly which alleged constitutional violation." *Slayton*, 515 F. Supp. 3d at 705. Like the plaintiffs in *Pershell* and *Slayton*, Plaintiff was forced face down and handcuffed when the arrest occurred and was

thus unable to identify the Defendant who took that specific action.[7] (ECF No. 75, PageID.1044 n.10; ECF No. 74-2, PageID.1020–1022.)

Accordingly, Defendants' third objection is denied.

## D.   Objection 4

Defendants' fourth objection states that Judge Grand "committed a clear error by inviting and relying on Plaintiff's subsequent affidavit." (ECF No. 83, PageID.1073.) While unclear, this objection appears to address the R&R's recommendation that the Court not grant summary judgment on Plaintiff's excessive force claim related to the too-tight handcuffs.

Defendants' basis for this objection is twofold. First, they accuse Judge Grand of "invit[ing] the Plaintiff to provide a sham affidavit because Plaintiff's counsel did not produce evidence that Mr. Sharpe complained about his handcuffs being too tight." (ECF No. 83,

---

[7] Defendants argue that *Pershell* requires a plaintiff to be unconscious in order to find that a plaintiff's inability to identify a defendant was due to circumstances beyond that plaintiff's control. (*See* ECF No. 83, PageID.1073 ("Unlike *Pershell*, no evidence exists that Mr. Sharpe was unconscious . . . .").) Nowhere in *Pershell* does the Sixth Circuit state that unconsciousness is required. In fact, the alleged unconstitutional actions in *Pershell* largely occurred before that plaintiff lost consciousness. *Pershell*, 430 F. App'x at 412 ("As a result of the third blow, Pershell lost consciousness.").

PageID.1074.) However, Defendants do not point to any basis in the record to suggest that Judge Grand "invited" a "sham affidavit." Nor have they offered any legal or factual basis for their bald characterization of Judge Grand's actions. *See Kilpatrick v. HCA Hum. Res., LLC*, No. 3:17-CV-00670, 2022 WL 866258, at *2 (M.D. Tenn. Mar. 22, 2022) ("[T]he Court will disregard all argument, characterization of documents, and statements for which there is no citation to the record."), *aff'd*, No. 22-5307, 2023 WL 1961223 (6th Cir. Feb. 13, 2023).

To the contrary, the record indicates that "[P]laintiff's counsel asked for permission to supplement the summary judgment record with evidence regarding [P]laintiff[']s handcuffing claim" and that Judge Grand approved this request. (Minute Entry, November 21, 2023.) And according to the R&R, Judge Grand approved Plaintiff's request to supplement the summary judgment record after a discussion of whether Defendants' summary judgment motion addresses Sharpe's handcuffing claim:

> In their motion for summary judgment, Defendants, in recounting Sharpe's "version" of the events, made no mention of his allegations that Defendants had handcuffed him too tightly or that they refused his requests that they loosen the handcuffs . . . .

At oral argument the Court questioned whether Defendants' motion was directed to Sharpe's handcuffing claim. Indeed, in the last paragraph of their motion, Defendants wrote, "here, all [Sharpe] points to is some bruising on a shoulder or arm," failing to mention anything about the injuries Sharpe alleged to his wrists. Defendants responded that their approach owed to the fact that Sharpe had failed to come forward with admissible evidence that he complained the handcuffs were too tight and that those complaints were ignored, and that it appeared he had essentially abandoned the handcuffing claim.

Sharpe insisted at the hearing that he had not abandoned his handcuffing claim and requested an opportunity to supplement the summary judgment record with evidence regarding that claim. The Court allowed him to do so, and allowed the Defendants to file a response to whatever Sharpe filed.

(ECF No. 75, PageID.1047–1048 (alteration in original) (internal citations omitted); *see also* ECF No. 55 (Defendants' summary judgment motion).) As such, Judge Grand's decision to allow the parties to supplement the record was not erroneous.

Defendants also argue that the R&R misapplied *Reich v. City of Elizabethtown*, 945 F.3d 968 (6th Cir. 2019), and therefore erred in relying on Plaintiff's affidavit in recommending that the Court deny summary judgment on the too-tight handcuffing excessive force claim. (ECF No. 83, PageID.1074–1075; ECF No. 75, PageID.1049–1052.) In

*Reich*, the Sixth Circuit held that a post-deposition affidavit cannot "create a factual issue" if the affidavit "directly contradicts" the nonmoving party's prior sworn testimony. *Reich*, 945 F.3d at 976 (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)). However, the Sixth Circuit uses "a relatively narrow definition of contradiction." *Id.* (quoting *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006)). "If a party 'was not directly questioned about an issue,' a later affidavit on that issue simply 'fills a gap left open by the moving party.'" *Id.* (quoting *Aerel, S.R.L.*, 448 F.3d at 907). "Where a deponent is 'asked specific questions about, yet denie[s] knowledge of, the material aspects of her case, the material allegations in her affidavit directly contradict her deposition.'" *Id.* (alteration in original) (quoting *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013)).

For example, in *Reich*, the affiant was asked multiple times in her deposition to estimate the distance between several people at the time of the event in question. *Id.* at 977. She said she did not know, but later submitted an affidavit with estimated distances. *Id.* The Sixth Circuit ruled that her affidavit and deposition testimony were directly

contradictory and that her affidavit could not be considered because she "offer[s] no persuasive justification for this contradiction." *Id.*

Here, Defendants contend that Plaintiff's affidavit is in direct contradiction with his deposition testimony. In the affidavit, Plaintiff states:

> 19. I complained about the handcuffs both in my home and outside while I was taken to the patrol car and told to get in.
>
> 20. When I complained about the handcuffs in my home, all Defendants were present, ignored my complaints and did nothing to loosen the handcuffs.
>
> 21. While I was walking to the patrol car I requested that the handcuffs be loosened and I complained again when I initially got in the car.
>
> 22. The handcuffs were never loosened, and I was in pain.

(ECF No. 73-2, PageID.964.) In his deposition, Plaintiff was asked to explain what happened. (*See* ECF 74-2, PageID.1012–1029; *see also id.* PageID.1012 ("Tell me what happened. Walk me through it, please.").) However, Plaintiff's testimony was far from free flowing, as Defendants' counsel directed the deposition through frequent questioning.[8] While it

---

[8] The detailed questioning included whether a particular Defendant touched him (ECF No. 74-2, PageID.1016), whether Plaintiff used profanities (*id.* at PageID.1018), where Plaintiff's hands were when he was being arrested (*id.* at

is true that Plaintiff did not say in his deposition that he told Defendants the handcuffs were too tight (*see* ECF No. 75, PageID.1050), Defendants never asked if Plaintiff complained, despite their awareness of his excessive force claim based on handcuffing. (*See id.* at PageID.1051; *see also* ECF No. 16, PageID.119 (alleging that "Plaintiff was placed in handcuffs which were too tight" and that "Plaintiff complained about the handcuffs and requested that the handcuff would be loosened").)

Defendants fail to point to any specific instances where Plaintiff gave materially different testimony in his deposition. *See Reich*, 945 F.3d at 976 (stating that direct contradiction occurs "[w]here a deponent is 'asked specific questions about . . . the material aspects of [his] case'" (quoting *Powell-Pickett*, 549 F. App'x at 353)). Thus, there is no indication of a direct contradiction between Plaintiff's deposition and the affidavit.

Under *Reich*, "if no direct contradiction exists, 'the district court should not strike or disregard th[e] affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue.'" *Reich*, 945 F.3d at 976 (alteration in original) (quoting *Aerel, S.R.L.*, 448

_____

PageID.1019), how Plaintiff landed when he was taken to the ground (*id.* at PageID.1020), and what Defendants said when Plaintiff was taken down. (*Id.* at PageID.1021.)

F.3d at 908). Defendants have not made any arguments that, despite the lack of a direct contradiction, the Court should strike or disregard the affidavit. After a careful review of the R&R and the record, the Court finds that the Sharpe affidavit is not an attempt to create a sham fact issue.[9] As such, the affidavit was appropriately considered at summary judgment, including in the context of Plaintiff's too-tight handcuffing claim.[10]

Defendants also object that Plaintiff's testimony "about lacerations around his wrist . . . does not provide any support that Mr. Sharpe made a complaint to one or more of the Defendants." (ECF No. 83, PageID.1075 (citing ECF No. 74, PageID.1050–1051).) But the R&R mentions Defendants' acknowledgement of the handcuffing injury to demonstrate that Plaintiff has sufficient evidence for other aspects of the claim—

---

[9] The Court is especially convinced because Dianna Sharpe, a witness and Plaintiff's wife, stated twice in her deposition that she thought Plaintiff had told the officers that the handcuffs were too tight. (ECF No. 73-4, PageID.983–984.)

[10] Defendants object to the R&R's cite to *Johnson v. Williams*, No. 15-13856, 2017 WL 11318160 (E.D. Mich. Aug. 7, 2017), because the issue in *Johnson* had to do with a compound question. (ECF No. 83, PageID.1074.) It appears that the R&R cited to *Johnson* for the proposition that the deposing party has a duty to ask follow-up questions when answers are unclear or ambiguous. (ECF No. 75, PageID.1051.) Regardless of the applicability of *Johnson* to this issue, the Court, for the reasons stated, finds that the affidavit does not directly contradict the deposition.

namely, that he suffered a physical injury as a result of the handcuffing. (ECF No. 75, PageID.1052.) Thus, this argument is unavailing.

Finally, Defendants take issue with the R&R's reliance upon Dianna Sharpe's deposition testimony that stated, twice, that she thought Plaintiff "said the handcuffs were too tight." (*Id.* at PageID.1051–1052 (quoting ECF No. 73-4, PageID.983–984).) According to Defendants, these statements are "speculative" (ECF No. 83, PageID.1075), and cannot create a material dispute of fact because "[i]f he may have said the handcuffs were too tight, he may also have not said the handcuffs were too tight." (ECF No. 74, PageID.1007–1008.) Defendants do not cite to any case that indicates that witness testimony should be disregarded as speculative when the deponent use the phrase, "I think." Defendants offer no other basis to suggest that Dianna Sharpe's testimony is not based on her personal knowledge and recollection as a witness present during the event. Thus, Defendants do not demonstrate that her eyewitness testimony is "mere speculation, conjecture, or fantasy." *Lewis v. Phillip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

Accordingly, Defendants' fourth objection is denied.

## IV.   Conclusion

For the reasons set forth above, Defendants' objections (ECF No. 83) are DENIED, the R&R (ECF No. 75) is ADOPTED, and Defendants' corrected motion for summary judgment (ECF No. 55) is DENIED.

IT IS SO ORDERED.

Dated: March 31, 2024          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2024.

                              s/William Barkholz
                              WILLIAM BARKHOLZ
                              Case Manager